UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSHUA JACKSON and ) <br> EDWARD C. COOK, ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> DENNIS REAGLE; MAGGIE BRYANT; ) <br> CENTURION HEALTH OF INDIANA, LLC; ) <br> DANIELLE STASIAK; KEVIN ORME; ) <br> WILLIAM CALLAHAN; BOBBY LATOUR; ) <br> JEFFERY MEECE; CHRIS ERTEL; VINCENT ) <br> STANLEY; ANDY BAGIENSKI; ) <br> AQUA INDIANA, INC.; and ) <br> TOWN OF INGALLS, INDIANA, ) <br> ) <br> Defendants. ) | Case No. 1:21-cv-03120-JPH-KMB <br><br><br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Joshua Jackson and Edward C. Cook, by counsel, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and order of this Court (Dkt. 103 at 2), allege and state as follows:

**JURISDICTION, VENUE, AND CAUSES OF ACTION**

1. This Court has original subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

2. Personal Jurisdiction is proper in this Court because Defendants reside and conduct their business within this judicial district.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district.

4. Plaintiffs set forth claims under the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, and the law of the State of Indiana.

## PARTIES

5. At all relevant times, both Plaintiffs were incarcerated at Pendleton Correctional Facility ("PCF"), 4490 West Reformatory Road, Pendleton, Indiana 46064, in the custody of the Indiana Department of Correction ("IDOC").

6. At all relevant times, Defendant Dennis Reagle served as Warden for PCF, whose job was to ensure the health and safety of the inmates at PCF, including Plaintiffs. Reagle is sued in his individual capacity for actions and omissions made under color of law.

7. Defendant Maggie Bryant currently serves as the Deputy Warden of Operations for PCF, whose job is to ensure the health and safety of the inmates at Pendleton Correctional Facility, including Plaintiffs, and is sued in her official capacity.

8. At all relevant times, Defendant Centurion Health of Indiana, LLC ("Centurion"), was a private actor under contract with the IDOC or otherwise obligated to provide medical care to inmates incarcerated by the IDOC. Because its conduct is fairly attributable to the State of Indiana, Centurion and its employees, contractors, agents, and apparent agents acted under color of state law as described herein. *See West v. Atkins*, 487 U.S. 42, 54 (1988).

9. At all relevant times, Defendant Danielle Stasiak served as the Infection Control Nurse for Defendant Centurion at PCF. Defendant Stasiak is sued in her individual capacity for actions and omissions made under color of law.

10. At all relevant times, Defendant Kevin Orme served and serves as the Executive Director of Construction Services for IDOC and is sued in his individual and official capacities for actions and omissions made under color of law.

11. At all relevant times, Defendant Jeffery Meece served and serves as the Southern Regional Director for IDOC and is sued in his individual and official capacities for actions and omissions made under color of law.

12. At all relevant times, Defendant Chris Ertel served and serves as the Deputy Warden of Operations for PCF and was responsible for strategic planning, risk assessment, risk management, and implementation. Defendant Ertel is sued in his individual and official capacities for actions and omissions made under color of law.

13. At all relevant times, Defendant Vincent Stanley served and serves as the Physical Plant Director for PCF and is sued in his individual and official capacities for actions and omissions made under color of law.

14. At all relevant times, Defendant William Callahan served and serves as a Maintenance Supervisor for PCF and is sued in his individual and official capacities for actions and omissions made under color of law.

15. At all relevant times, Defendant Bobby Latour served and serves as a Maintenance Supervisor for PCF and is sued in his individual and official capacities for actions and omissions made under color of law.

16. At all relevant times, Defendant Andy Bagienski served as the Safety Hazard Manager for PCF and was responsible for the safety regulation, inspection, security, and supervision of risk sources. Defendant Bagienski is sued in his individual capacity for actions and omissions made under color of law.

17. At all relevant times, the Defendant Town of Ingalls, Indiana, a political subdivision duly formed pursuant to the law of the State of Indiana, was charged with the maintenance and treatment of its water supply system, was the provider of water to PCF, and is sued for actions and omissions made under color of law.

18. At all relevant times, Defendant Aqua Indiana, Inc., was a private actor under contract with Defendant Ingalls' or otherwise obligated to manage the water system of the Town of Ingalls.. Because its conduct is fairly attributable to the Town of Ingalls, Aqua Indiana, Inc., acted under color of state law as described herein. *See West*, 487 U.S. at 54.

## FACTUAL STATEMENT

19. At all relevant times, Plaintiffs were incarcerated at PCF.

20. At all relevant times, the IDOC and its employees were charged with providing for incarcerated offenders' basic human needs.

21. At all relevant times, Defendant Town of Ingalls' public water system provided water to PCF.

22. At all relevant times, Defendant Aqua Indiana, Inc. was contracted to manage Defendant Ingalls' water system.

23. The water supplied at PCF is for inmate drinking and bathing, and for the cooking and heating of all foods prepared in facility kitchens.

24. The IDOC regularly published water quality reports until several years prior to the legionella outbreak at PCF.

25. Defendants stopped conducting regular testing and maintenance of PCF's community water system at some point prior to events giving rise to this action.

26. Defendants' Reagle, Bryant, Ertel, Orme, Meece, Callahan, Latour, Bagienski, and Stanley (collectively "State Defendants") failure to conduct regular testing and maintenance of PCF's community water system led to the deterioration of certain water pipes, and eventually to the distribution of unsafe water throughout PCF.

27. The State Defendants' failure to conduct regular testing and maintenance of PCF's community water system led to an oversight in the development of dead legs—sections of potable water piping systems that have been altered, abandoned, or capped such that water either cannot flow through them, or flows through very slowly or infrequently.

28. Stagnant water caused by dead legs in community water systems have a higher propensity to germinate legionella pneumophila and helicobacter pylori, among other bacteria.

29. Legionnaires' disease is caused by the infiltration of legionella bacterium into a water system and then by a person breathing in small droplets of water in the air that contain the bacteria, or aspirating the contaminated water.

30. Inhalation of contaminated water can occur in several manners, such as showering in the contaminated water or breathing in the water molecules from a large-scale cooling system, shower, steam, or humid environment.

31. Legionnaires' disease is a severe form of pneumonia that is potentially fatal if not adequately and timely treated.

32. The legionella bacterium also causes Pontiac fever, a milder illness resembling the flu.

33. Although prompt treatment with antibiotics usually cures Legionnaires' disease, some people continue to have problems after treatment.

34. Medically vulnerable populations such as the incarcerated are more susceptible to Legionnaires' disease.

35. As early as September 2021, Plaintiffs began to complain of deep coughs, fever, headaches, abdominal pains, muscle aches, difficulty breathing and other respiratory issues, nausea, lethargy, cold chills, diarrhea, stool complications, cardiovascular issues, and possible kidney issues.

36. In October 2021, PCF's leadership instructed both the incarcerated population, including Plaintiffs, and PCF staff to avoid drinking the water.

37. In October 2021, the Indiana Department of Health confirmed that an incarcerated person at PCF tested positive for legionella bacteria in his blood while diagnosing an acute medical condition with a seriously compromised respiratory system.

38. On December 3, 2021, employees of PCF confirmed that an inmate passed away due to complications from Legionnaires' disease.

39. PCF employees, including Defendant Ertel, claimed the water was safe to drink, but PFC simultaneously disabled the use of water fountains in several cell houses.

40. PCF also limited the number of showers in use in several cell houses.

41. The IDOC enabled PCF to purchase residential-grade shower filters that were only suitable for 30-days use yet were expected to be used by hundreds of people at PCF, including Plaintiffs.

42. Plaintiffs submitted numerous requests for healthcare to Defendant Centurion's employees that were ignored: when care was later provided, it was untimely and inadequate.

43. Defendants Centurion and Stasiak, among other Centurion employees, failed to take reasonable measures to provide timely and adequate medical attention to the afflicted Plaintiffs.

44. Plaintiffs submitted grievances regarding the quality of the water at PCF that were ultimately ignored.

45. State Defendants and Centurion had a policy, practice, or custom to not test the incarcerated population at PCF for Legionnaires' disease.

46. Defendants Town of Ingalls and Aqua Indiana failed to provide safe potable water to PCF, resulting in Plaintiffs' illness.

47. State Defendants had a policy, custom, or practice to not test, examine, or perform routine maintenance of PCF's community water system.

48. State Defendants failed to adequately respond to issues in PCF's community water system by neither improving nor fixing the water system infrastructure that provided water to Plaintiffs.

49. The temperature of the shower water was at the peak range for legionella proliferation.

50. There was zero or nearly zero disinfectant in most locations of PCF's water systems, providing little to no protection to defend against legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health.

51. PCF's plumbing contained sediment and scale, which fosters the growth of legionella pneumophila and are a food source for the bacterium.

52. State Defendants permitted the deterioration of the community water system and dead legs contained within, which allowed legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health to contaminate the community water system.

53. State Defendants permitted certain showers to become non-functioning at PCF, thereby contributing to water stagnation that allowed legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health to contaminate the community water system.

54. State Defendants failed to maintain or otherwise permitted the draining system at PCF to stagnate, which allowed legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health to contaminate the community water system.

55. Despite knowing that the water supply at PCF became contaminated with legionella bacteria, State Defendants' policies, practices, or customs caused Plaintiffs' requests to be provided with safe water to be ignored.

56. Despite knowing that the water supply at PCF became contaminated with legionella bacteria, State Defendants' policies, practices, or customs caused Plaintiffs' requests for appropriate and timely medical treatment to be ignored.

57. Despite knowing that the water supply at PCF became contaminated with legionella bacteria, Defendants Centurion and Reagle executed policies, practices, or customs that led to the failure to timely test and treat Plaintiffs, who were suffering from severe symptoms of Legionnaires' disease.

58. Despite knowing that the water supply at PCF became contaminated with legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health, Defendants Centurion, Reagle, and Stasiak executed policies, practices, or customs that led to the failure to provide potable water to Plaintiffs.

59.     Despite knowing that the water supply at PCF became contaminated with legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health, Defendants Centurion, Reagle, and Stasiak executed policies, policies, practices, or customs that led to the failure to provide reasonably prompt medical attention to Plaintiffs.

60.     Upon reasonable information and belief, Defendants Centurion and Stasiak were deliberately indifferent to, and/or delayed or denied medical treatment for, Plaintiffs' serious medical needs.

61.     While incarcerated at PCF, Plaintiffs were injured from exposure to contaminated water that contained legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health due to State Defendants' failure to maintain a safe, functioning, and sanitary water system.

62.     State Defendants did not implement adequate remedial treatment procedures or physical corrections to the water system infrastructure.

63.     While incarcerated at PCF, Plaintiffs were injured from exposure to contaminated water that contained legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health due to Defendants' policies, practices, and customs of deficient testing and maintenance of the facility's water supply, as well as a failure to provide reasonably prompt medical attention to Plaintiff.

64.     Plaintiffs are still suffering from the lingering effects of Legionnaires' disease and/or Pontiac Fever as of the date of this filing.

## CLAIMS FOR RELIEF

### Count I
**Violation of the Eighth Amendment of the United States Constitution**
**Conditions of Confinement**
**State Defendants, Town of Ingalls, and Aqua Indiana**

65. Plaintiffs fully incorporate paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiffs have rights protected under the Eighth and Fourteenth Amendments to the United States Constitution. These rights include being provided with humane conditions of confinement while incarcerated at a prison such as PCF.

67. State Defendants had a duty to provide adequate shelter, which includes a safe, functioning, and sanitary water system, but breached this duty as described supra.

68. The contaminated water subjected Plaintiffs to a strong likelihood of serious harm or death.

69. Defendants were aware of this strong likelihood that Plaintiffs would be seriously harmed or die.

70. Defendants consciously failed to take reasonable measures to prevent this harm from occurring.

71. Plaintiffs would not have been harmed, or would have suffered less harm, if Defendants had taken timely reasonable measures.

72. The prison officials at PCF, acting under color of law, failed to provide Plaintiffs with humane conditions of confinement as required by the Eighth Amendment of the United States Constitution.

73. State Defendants, Town of Ingalls, and Aqua Indiana violated Plaintiff's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment when they were deliberately indifferent to PCF conditions that were and continue to be hazardous to Plaintiffs' health.

74. Plaintiffs were harmed by the foregoing violation of their Eighth Amendment rights.

75. State Defendants, Town of Ingalls, and Aqua Indiana possessed the power to correct all of the inadequate conditions Plaintiffs have alleged in this Complaint.

## Count II
### Violation of the Eighth Amendment of the United States Constitution
### Deliberate Indifference to a Serious Medical Need
### Centurion and Stasiak

76. Plaintiffs fully incorporate paragraphs 1 through 75 as though fully set forth herein.

77. Plaintiffs have rights protected under the Eighth and Fourteenth Amendments to the United States Constitution. These rights include being provided with access to constitutionally adequate medical care while incarcerated at a prison such as PCF.

78. Defendants Centurion and Stasiak had a duty to not be deliberately indifferent to Plaintiffs' serious medical needs.

79. Defendants Centurion and Stasiak were deliberately indifferent to Plaintiffs' serious medical needs, when, inter alia, they refused to provide testing and adequate medical treatment for Plaintiffs when Plaintiffs suffered from symptoms of disease associated with legionella exposure.

80. Plaintiffs exhibited symptoms consistent with Legionnaires' disease and/or Pontiac Fever at the time of their requests for healthcare.

81. Defendants Centurion and Stasiak had a custom or practice of failing to test and treat inmates that complained of symptoms of Legionnaires' disease and/or Pontiac Fever.

82. Defendants Centurion and Stasiak disregarded a substantial risk of harm to Plaintiffs by failing to provide constitutionally adequate medical care to Plaintiffs after learning that they were seriously ill.

83. Defendants Centurion and Stasiak failed to take reasonable measures to provide testing or treatment for serious medical needs by having a practice or custom to not test Plaintiffs for legionella exposure.

84. A Centurion policy, custom, practice, or string of acts resulted in its deliberate indifference to Plaintiffs' serious medical needs, which proximately caused him harm. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

85. Defendants Centurion and Stasiak had a duty to provide adequate medical care to Plaintiffs and take reasonable measures to protect Plaintiffs' safety.

86. Defendants Centurion and Stasiak knew of the substantial risk Plaintiffs would suffer from progression of Legionnaires' disease.

87. Plaintiffs were harmed as a result of the foregoing deliberate indifference.

88. The actions and omissions of Centurion and Stasiak described herein constitute a violation of the rights secured to Plaintiffs by the Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution.

## Count III
### Negligence in Violation of Indiana Law
### Town of Ingalls and Aqua

89. Plaintiffs fully incorporate paragraphs 1 through 88 as though fully set forth herein.

90. At all relevant times, the Defendants Town of Ingalls and Aqua had a duty to exercise ordinary diligence and care against unreasonable risk of harm.

91. At all relevant times, Defendants Town of Ingalls and Aqua had a duty to Plaintiffs and other inmates to exercise ordinary care in the performance of their duties and responsibilities as they relate to their duties at PCF.

92. Defendants breached their respective duty of care owed to Plaintiffs by, among other things:

(a) failing to properly maintain water distribution facilities at PCF;

(b) failing to mitigate a known water contamination on or before October 24, 2021;

(c) failing to protect inmates from a known and lethal health hazard, namely legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health;

(d) failing to warn inmates of a known, deadly hazard, namely legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health; and

(e) failing to provide preventative methods to reduce the risk of foreseeable harm.

93. As a result and consequence of the negligence of Defendants, Plaintiffs suffered special and general damages to be proven with certainty at trial.

## Count IV
### Negligence in Violation of Indiana Law
### Centurion and Stasiak

94. Plaintiffs fully incorporate paragraphs 1 through 93 as though fully set forth herein.

95. Defendants Centurion and Stasiak were responsible for providing health care to Plaintiffs at all times relevant to this action.

96. Defendants Centurion and Stasiak owed a duty to Plaintiffs to act with reasonable care and provide medical attention pursuant to the standard of care.

97. Defendant Centurion itself, and by and through its employees, contractors, agents, and apparent agents who were acting within the scope of their employment or apparent authority, were negligent in providing health care to Plaintiffs, and breached the duty and standard of care they owed them by their failure to treat them for symptoms stemming from legionella exposure.

98. Defendant Centurion is vicariously liable for the negligent acts of its employees within the course and scope of their employment, described herein, via *respondeat superior*.

99. Defendant Centurion is also vicariously liable for all torts committed by its contractors, agents, and apparent agents within the scope of their authority and agency on behalf of Centurion.

100. Some or all of the negligent acts and/or failures to act of the Defendants referred to in the foregoing rhetorical paragraphs were malpractice in connection with the provision of health care.

101. As a proximate result of the acts of Defendants below the applicable standard of care, Plaintiffs suffered severe medical ailments.

102. As a proximate result of the failure to provide clean and sanitary water, Plaintiffs were harmed.

## DAMAGES

103. Plaintiffs fully incorporate paragraphs 1 through 102 as though fully set forth herein.

104. As a result and consequence of the actions and/or inactions of Defendants, Plaintiffs suffered general and special damages which Plaintiffs seek to recover.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them relief, by:

(a) Entering judgment in their favor and against Defendants for violation of the Eighth Amendment;

(b) Entering judgment in their favor for any negligent acts performed by any Defendant;

(c)  Entering judgment against Defendants, jointly and/or separately, for declaratory and injunctive relief;

(d)  Awarding Plaintiffs all damages allowed by law, including punitive damages;

(e)  Awarding Plaintiffs their attorney fees and costs for this action and interest as allowable by law; and

(f)  Awarding any other relief deemed just and proper.

Respectfully submitted,

COHEN & MALAD, LLP


By:   */s/ Gregory L. Laker*
Gregory L. Laker #10322-49
Conner R. Dickerson #36374-49
COHEN & MALAD, LLP
One Indiana Square, Ste. 1400
Indianapolis, IN 46204
317-636-6481 (Telephone)
317-636-2593 (Facsimile)
*Attorneys for Plaintiffs*

Mark W. Sniderman #26599-49
One Indiana Square, Ste. 1550
Indianapolis, IN 46204
Tel: (317) 361-4700
Fax: (317) 231-1106
E-mail: mark@snidermanlaw.com
*Attorney for Plaintiffs*