UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSHUA JACKSON, <br> EDWARD C. COOK, <br><br>       Plaintiffs, <br><br>       v. <br><br> DENNIS REAGAL Warden, <br> MAGGIE BRYANT, <br> CENTURION HEALTH OF INDIANA, LLC, <br> DANIELLE STASIAK, <br> KEVIN ORME, <br> WILLIAM CALLAHAN, <br> BOBBY LATOUR, <br> JEFFERY MEECE, <br> CHRIS ERTEL, <br> VINCENT STANLEY, <br> ANDY BAGIENSKI, <br> AQUA INDIANA, INC., <br> TOWN OF INGALLS, INDIANA, <br><br>       Defendants. | No. 1:21-cv-03120-JPH-KMB |

**ORDER ON MOTIONS TO DISMISS**

Joshua Jackson and Edward Cook were inmates at Pendleton Correctional Facility ("PCF") where they, along with hundreds of other inmates, were exposed to contaminated water. *See* dkt. 106. They have filed this case against Indiana Department of Correction officials; medical providers at PCF; the Town of Ingalls, which provided water to PCF; and Aqua Indiana, which managed the Town of Ingalls's water system. *See id.* This case is proceeding as the lead case regarding Legionnaires' disease at PCF, with other inmates proceeding in related actions. *See* dkt. 117 at 2.

1

Defendants Town of Ingalls and Aqua Indiana have filed motions to dismiss the claims against them.  Dkt. [137]; dkt. [142].  For the reasons below, those motions are **GRANTED**.

# I.
# Facts and Background

Because Defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Several years before 2021, Defendants stopped testing and maintaining PCF's water system.  Dkt. 106 at 4.  That caused the deterioration of pipes and stagnant water, leading to the distribution of contaminated water throughout PCF.  *Id.* at 4–5.  The contamination included legionella bacteria, which causes Legionnaires' disease—a "severe form of pneumonia"—and its milder cousin, Pontiac fever.  *Id.* at 5.

In September 2021, while Mr. Jackson and Mr. Cook were inmates at PCF, they suffered "severe symptoms of Legionnaires' disease," including deep coughs, fevers, respiratory issues, nausea, diarrhea, cardiovascular issues, and other symptoms.  *Id.* at 6, 8.  The next month, a PCF inmate tested positive for legionella and PCF leadership told inmates and staff not to drink the water.  *Id.* at 6.

PCF's water was provided by the Town of Ingalls, which contracted with a private company, Aqua Indiana, to manage its water systems.  *Id.* at 4.  Mr.

2

Jackson and Mr. Cook allege that the Town of Ingalls and Aqua Indiana "failed to provide safe potable water to PCF, resulting in [their] illness." *Id.* at 7.

Mr. Jackson and Mr. Cook brought this action *pro se* in December 2021. Dkt. 2. The Court recruited counsel for Mr. Jackson and Mr. Cook in November 2022. Dkt. 75. The amended complaint raises Eighth Amendment and Indiana-law negligence claims against Indiana Department of Correction officials; medical providers at PCF; the Town of Ingalls, which provided water to PCF; and Aqua Indiana, which managed the Town of Ingalls's water system. Dkt. 106. The Town of Ingalls and Aqua Indiana have filed motions to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. [137]; dkt. [142].

## II.
## Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021),

"but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

Indiana substantive law governs Mr. Jackson's and Mr. Cook's negligence claim. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

**A. Eighth Amendment claims**

Mr. Jackson and Mr. Cook allege Eighth Amendment cruel and unusual punishment claims under 42 U.S.C. § 1983 against the Town of Ingalls and Aqua Indiana. Dkt. 106 at 2, 9–11. In response to Aqua Indiana's motion to dismiss, however, Mr. Jackson and Mr. Cook "concede that at this point they

4

have not alleged sufficient facts for Aqua to be considered a state actor" as required for § 1983 liability.  Dkt. 165 at 12.  This claim against Aqua Indiana is therefore dismissed under that concession.

That leaves the Town of Ingalls which, as a municipality, can be held liable only under *Monell* for its own actions—but not "for the misdeeds of employes or other agents."  *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (explaining *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).  "The critical question under *Monell* is whether a policy or custom of a municipal entity caused a constitutional deprivation."  *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022).  So, for "a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e. a 'policy' or 'custom') . . .; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation."  *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023).

The Town of Ingalls argues that Mr. Jackson's and Mr. Cook's Eighth Amendment *Monell* claim must be dismissed because they have not satisfied that pleading standard.  Dkt. 138 at 6–13.  Mr. Jackson and Mr. Cook respond that their *Monell* claim is plausible because they allege that the Town of Ingalls had a policy or custom of failing to test and maintain PCF's water supply.  Dkt. 146 at 8–9.

"[T]o state a facially plausible" *Monell* claim, "the factual allegations . . . must allow [the Court] to draw the reasonable inference that the [Town] established a policy or practice" that caused PCF's contaminated water. *McCauley*, 671 F.3d at 618. Mr. Jackson and Mr. Cook have not met that standard here. Instead, they vaguely allege that "Defendants" (perhaps including the Town of Ingalls) stopped testing and maintaining PCF's water system and that the Town of Ingalls "failed to provide safe potable water to PCF." Dkt. 106 at 4, 7.

Those allegations are too vague and conclusory to meet the burden to "provide some specific facts" to support a *Monell* claim. *McCauley*, 671 F.3d at 616; *Thomas*, 74 F.4th at 523 ("Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."). While the "degree of specificity required is not easily quantified," Mr. Jackson and Mr. Cook "must give enough details about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616. But for the Town of Ingalls, the complaint tells no story at all. While it alleges that the Town of Ingalls may have stopped testing water and failed to provide safe water to PCF, it offers no reason to believe that it did so under a policy, custom, or practice—much less one that was "the moving force behind the federal-rights violation." *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th. Cir. 2022); *see Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (allegations must provide detail to "show how, in the plaintiff's mind at least, the dots should be connected").

Nor do the allegations support *Monell* liability based on a failure to create a policy. *See Taylor v. Hughes*, 26 F.4th 419, 436 (7th Cir. 2022) (explaining *Monell* liability in "the rare case" when "a violation of federal rights is a highly predictable consequence of a municipalities' failure to act"). Mr. Jackson and Mr. Cook do not explain why the Town of Ingalls would be required to create a policy specific to PCF's water system when "there is no duty on the part of a public utility . . . to inspect the devices, apparatus, or fixtures of a responsible patron on the patron's property, located at a point beyond the meter, which is the point of delivery of the utility." *KMC, LLC v. E. Heights Utils., Inc.*, 144 N.E.3d 773, 776 (Ind. Ct. App. 2020). Indeed, failure to make a policy can support *Monell* liability on an Eighth Amendment claim only if it "creates a risk that is sufficiently obvious as to constitute deliberate indifference." *Glisson v. Ind. Dept. of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). Mr. Jackson and Mr. Cook have not alleged that the risk of contaminated water was obvious *to the Town of Ingalls*, or explained why that may be reasonably inferred. *See* dkt. 106; dkt. 146; *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (Even "an official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment.").

Mr. Jackson and Mr. Cook therefore have not alleged "enough . . . factual content to nudge [the claim] across the line from conceivable to plausible." *McCauley*, 671 F.3d at 616. Indeed, they cite no case in which similarly sparse allegations were sufficient to plausibly allege a *Monell* claim.

7

*See* dkt. 146 at 6–9; *Thomas*, 74 F.4th at 524 ("All requirements must be scrupulously applied" to *Monell* claims.).

Moreover, the lack of allegations regarding any Town of Ingalls policy or custom contrasts with the detailed allegations about water conditions within PCF. The complaint explains how the *State Defendants*' lack of testing and maintenance within PCF led to deteriorated pipes where stagnant water could harbor contaminants. *See* dkt. 106 at 5. And it alleges that the *State Defendants* allowed the contamination to persist "by neither improving nor fixing the water system infrastructure." *Id.* at 7. Missing are any similar allegations about the Town of Ingalls. *See id.* The complaint therefore contains an "obvious alternative explanation" for PCF's water contamination, so it "stops short of the line between possibility and plausibility" for the claim against the Town of Ingalls. *McCauley*, 671 F.3d at 616; *see Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1031–32 (7th Cir 2024).

The Eighth Amendment *Monell* claim against the Town of Ingalls is therefore dismissed.

### B. Indiana-law negligence claims

Aqua Indiana argues that Mr. Jackson and Mr. Cook have not plausibly pleaded a negligence claim against it because they have not alleged facts supporting a duty that Aqua Indiana owed them. Dkt. 143 at 10–11. Mr. Jackson and Mr. Cook respond that Aqua Indiana had a duty "to provide safe potable water to PCF." Dkt. 165 at 7–9. They therefore identify "the central

8

concern of the Complaint" as Aqua Indiana's alleged negligence before the water was delivered to PCF.  *Id.*

The parties therefore appear to agree that Aqua Indiana had no duty to maintain PCF's plumbing or otherwise take any action within the facility.  *See* dkt. 143 at 10; dkt. 165 at 7–9.  To the extent that Mr. Jackson and Mr. Cook argue otherwise, they cannot succeed because Aqua Indiana did not owe a duty within PCF under Indiana law, and they do not argue that a new duty should be recognized.  *See KMC, LLC v. E. Heights Utils., Inc.*, 144 N.E.3d 773, 776 (Ind. Ct. App. 2020) ("[T]here is no duty on the part of a public utility . . . to inspect the devices, apparatus, or fixtures of a responsible patron on the patron's property, located at a point beyond the meter, which is the point of delivery of the utility."); *cf. Putnam Cnty. Sheriff v. Price*, 954 N.E.2d 451, 454–56 (Ind. 2011) (holding that the government's duty to exercise reasonable care to keep streets safe does not apply "[a]bsent ownership, maintenance, or control of the county roadway").

As for any duty before the water was delivered to PCF, Mr. Jackson and Mr. Cook allege that Aqua Indiana had a duty to Plaintiffs "to exercise ordinary care" that it breached in four ways.  Dkt. 165 at 8.

The first three of those alleged breaches relate to failing to mitigate, protect, and warn inmates of a "known water contamination," "namely legionella pneumophila, helicobacter pylori, and/or other bacteria that pose a risk to human health."  *Id.*  But the only alleged "known" contamination occurred within PCF.  *See* dkt. 106 at 6, 8 (allegations about State Defendants'

9

knowledge of contaminated water within PCF). While Mr. Jackson and Mr. Cook allege—with no factual heft—that Aqua Indiana "failed to provide safe potable water to PCF," they do not allege that the bacterial contamination at issue existed before the water was delivered to PCF or that any such contamination was "known" before the water left Aqua Indiana's control. Dkt. 106 at 7. As explained above, Aqua Indiana had no duty to mitigate, protect, or warn inmates of water contamination that developed after the water entered PCF. *KMC*, 144 N.E.3d at 776 (holding that public utility has no duty to inspect plumbing beyond the meter "which is the point of delivery of the utility"); *Price*, 954 N.E.2d at 454–56.

Finally, the complaint alleges that Aqua Indiana generally "fail[ed] to provide preventative methods to reduce the risk of foreseeable harm." *Id.* But Mr. Jackson and Mr. Cook cite no legal support for a duty that Aqua Indiana owed PCF inmates to provide preventative measures. *See* dkt. 165 at 8–9. The duty is instead "to supply enough water of good quality" to the facility. *KMC*, 144 N.E.3d at 776. Yet Mr. Jackson and Mr. Cook have not alleged that the bacterial contamination at issue was in the water before it entered PCF—much less that Aqua Indiana knew or should have known of any such contamination, *See* dkt. 106. So, as with the *Monell* claim, the allegations supporting the negligence claim are too vague and conclusory to meet the burden of "provid[ing] some specific facts" to support a negligence claim against Aqua Indiana. *McCauley*, 671 F.3d at 616; *Thomas*, 74 F.4th at 523 ("Threadbare recitals of a cause of action, supported by mere conclusory allegations, do not

10

suffice."). Again, the Plaintiffs have failed to allege "enough details about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616. The negligence claim against Aqua Indiana therefore must be dismissed.

The Town of Ingalls, however, argues only that the Court should relinquish supplemental jurisdiction over the negligence claim under 28 U.S.C. § 1367(c)(3) if the Court dismisses the § 1983 claim against it. Dkt. 138 at 13. This argument misreads § 1367(c)(3), which contemplates relinquishing supplemental jurisdiction over state law claims when all federal claims in the case have been dismissed. Here, federal claims remain in this case, just not against the Town. *See Hansen v. Bd. of Trs. of Hamilton*, 551 F.3d 599, 608 (7th Cir. 2008) (district court's discretion to relinquish jurisdiction under § 1367(c)(3) was never triggered because the court did not dismiss all claims over which it had original jurisdiction). The only other basis for relinquishing jurisdiction advanced by the Town is contained in one sentence in its reply brief that vaguely asserts that the negligence claim may raise novel or complex state law issues, without providing any detail or citation to relevant law. Dkt. 156 at 13-14. The Town of Ingalls therefore has not shown that relinquishing supplemental jurisdiction is appropriate at this point in this case.

Although the Town of Ingalls did not move to dismiss Plaintiffs' state law negligence claim against it, it appears the claim should be dismissed for the same reasons the negligence claim against Aqua Indiana is subject to dismissal. Thus, Plaintiffs are ordered to show cause by **October 25, 2024**,

11

why their negligence claim against the Town of Ingalls should not be dismissed for the same reasons the Court has dismissed the negligence claim against Aqua of Indiana. The Town of Ingalls **may respond by November 1, 2024**.

### C. Application to short-form complaints

The Court previously designated this action to be the "Lead Action" for purposes of consolidating the filings in over seventy related civil rights cases filed before December 2023 by various inmates at Pendleton Correctional Facility ("PCF") regarding allegedly unsafe water at that facility. *See* dkt. 161 at 3. This Order therefore also applies to all related actions filed before December 2023 (referred to as "Batch 1" cases, as listed in dkt. 157-1). The **clerk is directed** to enter a text-only entry in each of those cases with reference to this Order.

## IV.
## Conclusion

Defendant Aqua of Indiana's motion to dismiss, dkt. [142], is **GRANTED.** All claims against it are **dismissed with prejudice. The clerk is directed** to terminate Aqua Indiana as a defendant on the docket in this case and in all related cases filed before December 2023.[1]

Defendant Town of Ingalls' motion to dismiss, dkt. [137], is **GRANTED** as to Plaintiff's § 1983 *Monell* claim against it. Plaintiffs are ordered to show

---

[1] Mr. Jackson and Mr. Cook mention in their response to Aqua Indiana's motion to dismiss that they "reserve all rights to amend their pleadings." Dkt. 165 at 12. In order to amend the complaint, they would have to show good cause for extending the deadline for motions for leave to amend the pleadings under Federal Rule of Civil Procedure 16(b)(4) and that "justice . . . requires" leave to amend under Federal Rule of Civil Procedure 15(a)(2).

12

cause by **October 25, 2024**, why their negligence claim against the Town of Ingalls should not be dismissed for the same reasons the Court has dismissed the negligence claim against Aqua of Indiana.

**SO ORDERED.**

Date: 9/26/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSHUA JACKSON
222115
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

EDWARD C. COOK
998849
INDIANA STATE PRISON
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360

All electronically registered counsel